Please. It doesn't look like you're the big draw today, Mr. Patel. I mean, your audience is gone. You always deliver this powerful argument, and they didn't know that. You know why the crowd didn't stay for you? They've heard you before. Why don't we hear from you? This is the case of United States v. Battle. Good morning, Your Honors. In this case, at issue is whether Maryland assault with intent to murder is a violent felony under the ACCA Force Clause. It is not, because it can be committed by acts of omission, i.e., failing to feed a child or failing to provide medical care. Let me ask you on that. That's basically your thesis, is the omission aspect. Yes, Your Honor. That is the argument that I am going to be focusing on today. It seems to me, if you rely on an omission, in order to be first-degree murder, there has to be specific intent that the omission is intended to kill. Absolutely. And so, if you have the specific intent to kill, aren't we back into the cases like Castleman, you know, and the poisoning? No, Your Honor. Basically, what you're doing is, the omission is designed to kill somebody. And so, it's just one of the means to get to a very violent end. Well, Your Honor, there's two separate things going on. Under the Force Clause, one argument could be that there has to be an intentional mens rea, but our argument doesn't focus on the mens rea. It focuses on the act of mens rea. Well, no, it doesn't. There may be an omission that you have to address. So, our argument is that we're looking at the actus reus. We agree that the reason we win is not because of the mens rea. There is a specific intent to kill. Now, just before I get to that point, Your Honor, I just wanted to correct that there's a specific intent to kill, but that doesn't necessarily mean that it has to be a lesser included of first-degree murder. It can also be a lesser included of second-degree murder. In Maryland, second-degree murder, one of the ways in which it can occur is also an intent. I thought intent to murder is first-degree, because second-degree doesn't need specific intent. Well, there's four different types of mens rea for second-degree, and one of them can be intent to murder, too. Even premeditated murder is first-degree. Well, it can be, but the intent to murder takes it into the area where you're intending the death of somebody. Specific intent. Yes, Your Honor, but it can still be second-degree murder. The omission falls into the category, you know, the Supreme Court said, you know, when you take your finger like this with a gun trigger and you go like that, that's really, could be said, that's not force. Or you trick somebody into eating poison, that's not force. But both of them are intended to accomplish a violent end, a tool to accomplish a violent end, and therefore, it satisfies the force clause. Sure, Your Honor, but there we're talking about affirmative acts. I want to take the court to the language in Johnson 1 and in Leocal, and Johnson was all about the actus reus, and there the court held, gave us a really clear definition of use of physical force, and said that that means force exerted by and through concrete bodies, and then specifically referred to use of force as exertion of physical strength, and then said it requires the active employment of force. So in Castleman, the issue was indirect force versus direct force. So the point is this, when you pull the trigger, you are still doing something. Yes, Your Honor. I'm going to call it a positive action. You don't put the bullet right up in the person's head, maybe, but you take a physical action that leads to the chain of events, and a positive, I don't know what other word to use, positive physical action that then, in a couple steps, maybe leads to that force on the person. But your claim is that since an act of omission, and I think in Maryland, as I read the law, and I could be wrong, but that the assault with intent to murder is a lesser included in murder, so that the conviction on the baby that was put in the crib and not fed, the only difference between assault with intent to murder and murder is that the baby died. If the baby had lived, they could have been convicted. And that's an act of omission, I think, as you argue. And then for the government to win on the force issue, the government has to assert that no force in the positive exertion, no force equals indirect force. Yes, absolutely, Your Honor. You summed up my argument. Thank you. Sit down. Well, how do you square that with the poisoning? In other words, the mechanism of putting poison in the wine. It requires an affirmative act, Your Honor. But the poisoning doesn't get there. Well, the affirmative act is somehow, you can't just put the baby in the bed and the baby dies, you commit murder. There has to be evidence of specific intent that when you're putting them in, you know he's going to die. So the affirmative act is you're putting them in without food or you're putting, in other words, there's always, to carry out specific intent, there's always a design or a mechanism or a tool. We don't have a case in Maryland, not one, with an omission that I can find. Your Honor, are you talking about the Fourth Circuit? No, first we're murder. We do, because we have Simpkins v. State in which it was purely the act of omission, doing nothing, failing to feed the child, starvation, that resulted in death. And that was State v. Simpkins and that was murder and assault with intent to murder is a lesser included of murder. It's embedded in murder. So it's clear that under Maryland case law, you can absolutely commit an assault with intent to murder by an act of omission. But doesn't Castlewood focus on the object, in other words, the object of your conduct, in terms of being a force clause, is the force necessary to kill somebody. That's what the court kept focusing on. The poison killed him, the bullet killed him. And the intermediary acts, they do not assess whether it's active or passive or however it got there. You need immense ray of specific intent and you have to have the violent death or attempt threatened death. And all those elements are necessary here. But you have to have force. There is no force here. We're not talking about indirect versus direct. There's nothing. It's just not logical, Your Honor, to say that not lifting a finger, doing nothing, sitting on a couch is physical force. No, but that isn't the first degree murder. Just sitting on, there is more to it than that. You're bringing about somebody's death by something you had done. And it may be putting a bed in the crib, baby in the crib, intending to kill the baby. But Your Honor, what's important is what is the act that results in the physical injury? Is there an affirmative act required to, putting the bed in the baby is not going to kill the baby. It doesn't result in physical injury. You said putting the bed in the baby. So I think what kills the baby and what killed the baby in Simpkins was the starvation. And that was doing nothing. That wasn't an affirmative act. It wasn't putting the bed in the baby that killed. You don't think that's a violent act, a baby dying? Your Honor, absolutely it's violent. And that's why we had the residual clause. And of course, Congress intended for this to qualify as a violent felony. You think that's a violent act, or is that a violent result? Violent result, Your Honor. Yes. And thank you for correcting me. Just that in Castleman. Pardon me? In Castleman, that's exactly where the court focused. But the court focused on the affirmative acts. There was nothing about an act of omission, Your Honor. And I would point this court to United States v. Mayo, which said that Castleman did not address acts of omission. There's an en banc Fifth Circuit decision that just came out too, Reyes-Contreras, in which they talk about the indirect force versus direct force and say all their cases that made that distinction, like Torres-Miguel did, was overruled. But in footnote 25, the court specifically said Castleman does not address whether an omission, standing alone, can constitute the use of force. And also, Your Honors, I'm sorry I didn't put this in my brief, but doing more research this weekend, I actually looked at the domestic violence statute in Castleman. And I found a case in which it said that that offense could only be committed by affirmative acts. So the assault at issue there causing bodily injury, the way the Tennessee Court of Appeals defined it as one which could only be done by affirmative acts. So it can't be that then the Supreme Court decided an issue which never even came up, particularly when you have a case of Sue Perry. Well, if you were to say that an act of omission, the government's going to say this, I think, that an act of omission is force. If you say that, what then does force mean? Have you stretched force beyond having any meaning? It's either indirect force, I think Castleman is indirect force or direct force. They both qualify. That makes perfect sense. But we're bound by what the Supreme Court says about what is the violent felony and force therein. And I think the government has to make the argument that an act of omission is enough force. But then what is force? Exactly, Your Honor. Then it renders the force clause meaningless. It renders Johnson meaningless. This is what the court said. The use of force in Castleman's example, he's talking about the plaintiff Castleman, or defendant Castleman, is not the act of sprinkling poison. So they don't even worry about that. It is the act of employing poison knowingly as a device to cause physical harm. So the force is the physical harm. That the harm occurs indirectly rather than directly does not matter. Under Castleman's logic, after all, one could say that but the court did not focus on the means. The court said what made it violent force, the use of force, was the injury that's caused. But Your Honor, you have to read it in context. It was talking about affirmative action. And we have to read it consistent with Johnson 1. If doing nothing can be forced, then what's the point of the force clause? What's the point of using the words use of force? All the Congress needed to do was include the residual clause. It can't be that both things are exactly the same. Why wouldn't putting a baby in the crib be part of the, with the intent not to feed them? I mean, that not feeding may be nothing, but it causes the injury after you put them in an environment where there's nothing to be. Well, Your Honor, putting the baby in the crib is not the affirmative act that creates a physical injury. Now, we have to be vigilant. In U.S. v. Middleton, this court basically found that an offense didn't qualify as a South Carolina involuntary manslaughter because there was such tenuous causation, right? In that case, there was, the defendant sold some alcohol to a minor who then gave the drink to somebody who drove the car, which resulted in death. And that was tenuous causation. So I guess if you stretch it, there's always going to be some affirmative act somewhere. So we have to look at what caused the physical injury. And that's the act we're talking about. Would the conviction be the same if the parents had not put the child in the crib, but just let the child lay on the floor? Absolutely, Your Honor. There's nothing requiring the affirmative act. But I'm saying, I was just thinking about what Judge Quattlebaum asked. There is an act of putting the baby in the crib. It's maybe so far removed that it doesn't count. Maybe it does. But I'm wondering if you had not put, if you take away that act, and you just, the baby just wakes up one morning on the floor and you just ignore the baby for three weeks, you think that would sustain a conviction? Absolutely, Your Honor, because in Simpkins v. State, it wasn't, what the court focused on was the starvation, but not doing anything. They didn't focus on putting the baby in the bed, and it resulted in a murder conviction. And that, in turn, incorporates assault with intent to murder. So really, there is no affirmative act required. There always is, though. Isn't there almost always? There is some physical action that the culprit takes at some point, at some point. And then, so if that's what force is, what isn't force? Exactly, Your Honor. And I think United States v. Middleton addresses that tenuous causation there. It can't be that just some affirmative act occurred maybe 10 years ago, and now we're looking at that and saying there was some affirmative act. There has to be proximate cause and causation of the injury. The reason that the baby died isn't because the parent put the baby in the bed. Let's even take that example. It's because the child was not fed. It's completing action. And you say that wasn't essential in any way to that conviction. It was just the fact they did not feed the baby. Absolutely. Whether the baby was in the high chair, in the crib, on the floor, in the car seat, it's just the act of not doing something that allowed the conviction. The Castleman opinion really in deciding whether there's force focused on the injury. And it says, it is impossible to cause bodily injury without applying force in the common law sense. And so what they do is they work backwards. If you have the mens rea of intent to kill, and then you kill, or if the person dies, whatever it is, the injury is the evidence of force. And all they mean, indirect means, they don't discuss as they, as a matter of fact, they quote Lefebvre, the criminal law text, and there Lefebvre says even an omission can be a force. Your Honor, you have to read it consistent with Johnson. You have to read it consistent with giving the force clause some work. There has to be some meaning to it. And so if you read it that way, Your Honor, there would be, have been no need for the force clause. Why would there have been a force clause? There would absolutely, because everything would have fallen into the potential risk of serious injury. I think what's happening here is that with the demise of the residual clause, the government's trying really hard to cram everything into the force clause, and it doesn't fit, Your Honor, and there's an easy fix here. Congress can easily resolve this problem by saying the, an offense qualifies if it has an element of physical injury or attempted physical injury. That's the way to fix this. Oh, no, it'd be, why not? Results in. Results, absolutely. I mean, that's really what people think about on the street, I think. Was that a violent crime? That baby was starved to death. I think people say that was violence toward that baby. But the question is, is that force under the definition we have to apply? Absolutely, Your Honor. Well, LaFave talked about an omission being an act of force. Thus it is well established that a battery, and that's what the Supreme Court relied on, the battery, the common law battery, may be committed by administering a poison or by infecting with a disease, or even by simple omission to act where there is a duty to act, as where a hospital attendant fails to warn his flying patient that he is headed for an open window. That's in Maryland, Your Honor. That's the Maryland case that I cited to with respect to assault, but the Supreme Court could not have relied on that because the act that the offense at issue, the Tennessee offense, the case law says that can't be committed by an act of omission. So there's just no way to say the Supreme Court decided the act of omission issue. I'm trying to figure out how you can have specific intent to kill and actual death without... Because that's mens rea. That's not... I know, but when you couple the two, it's very important because the specific intent to kill and actually having killing the injury, what falls in between has got to be some kind of force. No, Your Honor, because it can be the lack of force. It's inaction. It's not lifting a finger. So no, there does not have to be an affirmative act. But it doesn't strike really in common sense that that answer makes sense, does it? Your Honor, I would agree if we were talking in the abstract and we weren't talking about... I'm just talking about a person on the street talking about it. Absolutely. But you're looking at case law and definitions of force and trying to find the force that qualifies here. Absolutely. Because it means no force in the total criminal sense. Right. Or the injury sense means force. That's kind of difficult. I think. I absolutely agree with you, Judge Schatz. All right. Let's see what the government has to say. Great. Thank you. Good morning. I'm Elizabeth Wright, Assistant U.S. Attorney for the District of Maryland, on behalf of the United States. May it please the Court, the Maryland offense of assault with intent to murder is a violent felony under the Armed Career Criminal Act force clause, as the District Court properly found in this case. What about that baby in the crib case? Where's the force there? There are several elements of that I would like to talk about. I'm just asking you to answer my question. Where's the force? First, is attempted, is assault with the intent to murder a lesser included of that murder conviction? It was not a lesser included offense of the murder conviction in Simpkins. And I want to be clear on what Simpkins was dealing with. Simpkins was dealing with attempt, excuse me, second degree murder of the depraved heart fault variety. Whereas assault with intent to murder is an alternate or can be viewed as a lesser included offense of second degree murder, but only of second degree murder that requires the specific intent to murder. Not murder. I'm talking about force. I'm talking about force. In terms of force, Your Honor, there are a couple of issues to raise. The first is that the AWIM offense in Maryland requires the use of force because, as the cases make clear, including Franklin and Jenkins, it is just shy of murder. It is first or second degree unmitigated murder in Maryland, with the only difference being that the victim did not die. Could the parents in, I guess it was parents, in that child in the crib death, could they have been charged with assault with intent to murder? I believe they could have, Your Honor, if they had the specific intent to murder. And that gets into the distinction. Even if they didn't use any force. Well, I believe the force would be, as Judge Niemeyer presaged, the act of confining. It isn't a use of force to confine the infant in the crib. I think it would be a different situation of just an individual walking by and not rescuing the infant. But you could not have a charge there in the imagined scenario where the infant is just lying on the floor. There could not be any charge of assault with intent to murder there. Why couldn't there be when the child is just lying on the floor? Because with the elements of assault with intent to murder, it requires... Do I understand you, you think the parents could have been convicted of assault with intent to murder? Yes, with the act being the confinement of that child. But they closed the door of the house and left the child on the floor. What about that? Yes, Your Honor. How old was the child? Wasn't old enough to walk around and get food. No, Your Honor. Then why wouldn't that be assault with intent to murder? With the intent to murder, Your Honor, I believe either of those scenarios would be. If there's an element of confinement, whether it's crib, home, or anywhere else. Yes, confinement or abandonment. But you said that Simpkins was a second degree murder? Yes, Your Honor. So there was no specific intent required? That's correct, Your Honor. It was a very different scenario from what we have here. How can we apply that to a situation where specific intent, because the only way you can manifest specific intent is to do something like locking the door, putting the baby in the crib, and closing the door, confining the baby or something. But if it's just neglect or leaving the baby alone, most it could be a second degree, right? Right, and that would be of the depraved heart variety. But there are situations where the specific intent to murder... Wait one second, I'm going to go back to my hypothetical. Yes, Your Honor. This baby couldn't walk, correct? Correct, Your Honor. What if you left the doors wide open? What if you opened the doors to your house and put the baby on the floor? There wouldn't be any confinement. Would that still allow conviction? It seems to me it would. We believe it would, Your Honor, because there is... Wait, no, wait, wait, wait. You answered in response to Judge Quattlebaum that there is some confinement or necessity for confinement. You said, yes, well, I'm proposing that there isn't any confinement. And you say that would suffice as well. With abandonment and other... Yes, I mean, confinement is not limited... Will Yes, Your Honor, in the sense that there was, in fact, a case, I believe it was in 1899, that is cited in Simpkins, that did refer to a conviction... So where is the force then? It was the act of putting the baby, I believe it was in a sand bed next to the road where the mother had placed the baby. And they did find, a long time ago, but they found that that was sufficient to constitute or to sustain a conviction for assault and intent to murder. So then what does force mean? If you could just put somebody down and walk away from them, if you can just leave them in the middle of the floor, they'd be convicted for assault with intent to murder. Where is there any force required in that? The force here is the two other elements beyond the intent to murder of this crime. You have the necessity here for an assault made by the defendant and committed with intent to murder. Those are the three elements as stated in Franklin. Well, that's right. But the Maryland courts have defined those in a way that it appears to require no physical force in the sense of the force clause. We think that's incorrect, Your Honor. Why am I wrong on that? There is no case that the defense points to or that the government has located that sustains a conviction for assault with intent to murder based on an omission. Wait, you just said that was a lesser included of that second degree murder or it's not? It is not a lesser included of the second degree murder that was at issue in Simpkins. It is a lesser included offense of a very specific type of second degree murder, which is murder with the specific intent to kill. The difference in that respect between second and first degree murder is the degree of premeditation. I don't think I understand what you're saying. I apologize, Your Honor. No, no, it's not. I'm not saying it's your fault. I'm just saying I don't understand. You know, we know that force is required, either direct or indirect force, correct, under the force clause. So then an act of omission doing nothing equals a direct force or an indirect force. Which does it fall under? Well, certain actions that can be cast and that I think the defendant would cast as an omission are instead, we submit acts that would be... I know that, but let's just go to as far out as you can think of that is covered. I mean, where does an act of omission, putting the baby on the floor and not feeding the baby, that's force used against that baby? I mean, by the way, the result's terrible and you ought to be punished, but how is that force under the definitions we have to apply? It's force as an assault, Your Honor. And under Castleman, referring to the language that Judge deployment of that abandonment or confinement or whatever it is as a means to kill, that brings us within the territory of the intentional infliction here of bodily injury that does suffice to qualify as a use of force under the force clause. And... The Supreme Court placed the force requirement in the causation of injury and or death. And as a consequence, any means that leads up to injury or death, they say it's impossible not to have injury or death without force. And as a consequence, when you have a specific intent to bring about injury or death, that's a crime of force. Whereas what I think they dispelled is the notion that the force has to be the actual thing that the defendant does as opposed to the result he's accomplishing. Right, Your Honor. And I think that is exactly right, especially in situations like here where you have the specific intent to deploy the use of force. And these two cases that are cited from Maryland were second degree murder cases. And both of them, you don't need the specific intent. One was leaving somebody freezing and the other intoxicated and freezing. And the other was the baby starvation. Both of them were second degree murder. That's correct, Your Honor. And second degree murder has a totally different requirement. It doesn't say you have to intend to kill. Well, I do believe that based on the cases, the discussion in Robinson and otherwise in Maryland, my understanding is that there is a version of second degree murder in Maryland that requires the intent to kill, but that is not premeditated. I understand, but those cases don't necessarily hold that. In other words, these cases were depraved heart murders. Yes, they are very different from this case. And it is key to the government's argument here that Mr. Battle does not point to any cases of an assault with intent to murder that have that specific crime that involved an specific use of force. The defense is attempting to basically reduce the assault with intent to force to simply assault and essentially go down to the lowest. Is your argument that force means intent plus results? Is that your argument? Intent plus results is enough to qualify as force. We do think under Castleman, that's correct, Your Honor. You think Castleman controls this decision? Yes, Your Honor. I think it is. I mean, there's additional support as well. But yes, based on the reasoning in Castleman, and also based on the Supreme Court's recent decision in Stoeckling, I think the result is compelled here. In Stoeckling, the Supreme Court referred to the Johnson holding and basically made clear again and made clear that we're dealing with force capable of causing physical pain or to an assault with intent to murder conviction in Maryland. The question of what the force was capable of because you can only have a conviction for this offense in Maryland under circumstances such that if the victim had died, it would be a first or second degree unmitigated murder. So we think that yes, Castleman governs here and there are multiple Fourth Circuit cases that necessitate the conclusion here as well. This court, Judge Shedd in Ray Irby was discussing second degree retaliatory murder and found that that was a violent felony. There are additional cases such as United States versus Smith that found that North Carolina voluntary manslaughter was a violent felony under the Armed Career Criminal Act and specifically focused there on the mens rea and how that uniquely created the situation where force would satisfy the force clause. So you say that an act of omission, I'm talking about in the causal chain, the direct causal chain of the violence, that cannot bring about a conviction in Maryland under assault with intent to murder? Under assault with intent to murder, I am saying that there must be some act made by the defendant. So an act made by the defendant and committed with a specific intent to murder. What's the least act that could be done? To give you some idea of what you think is a very slight act. Is that putting the baby in the crib? Yes, that could be, Your Honor. If you are subjecting the baby to these terms of confinement. Let me back up again and ask. What if you just put the baby can't really move around on the floor and leave all the doors and windows wide open and just go about your life and just ignore the baby? Is that susceptible of a conviction in Maryland? Yes, with the act of leaving the baby in a situation where it cannot. And the force would be what? Just the intent to do the harm and the resulting harm? Not at all, Your Honor. Those combined with the act of putting the baby in a good health. Again, I'd note that the defense... Actually, you know, your reliance on Castleman was right. But then your response to Judge Shedd's questions didn't focus on what Castleman made. They said two or three times, it is impossible to create, to have personal injury without force. And so they say any act or intent to bring about bodily injury, whether it's direct or indirect, is an act of force. And you don't analyze what happened before in the causation. What you act is you link it to you and then the bodily injury. So if you intended to kill somebody and then they were killed, that's forcible. That's the way I read Castleman. They say force is inherent in the injury. But I still think there has to be something that ties to... And the court in Castleman left this... The mens rea ties it to the person. Right, yes. We need the mens re requirement. The intermediate acts, the court explained, it says a bodily injury must result from physical force. That is the thesis on which they rely. That's a quote from Castleman. And then they go on to talk about all the various hypotheticals people were raising about passive conduct and things that are just left alone. Deceiving a victim into drinking a poison beverage without making any contact of any kind, none of that is a problematical for the court because the court's focusing on the injury as the force. Inherent in the fact that injuries cause, we don't suffer injury, physical injury, without force. Right, not for this purpose at all. Any kind of physical injury, it's always force. And that satisfies the force clause. How you get it to the defendant is the intent, specific intent to commit that bodily injury. That's right, Your Honor. And that's why certain cases like DUI are distinguished. So confining the baby is not the forceful act. Or putting the baby down is not the forceful act. The forceful act is killing the baby, the baby's injury, the injury to the baby. Yes, thank you, Your Honor. That's not what you're saying. I know it isn't. That's not what you're saying, that's what he's saying, but that's not what you're saying. Yes, we do. That's what Castleman says, right? We're just phrasing it slightly differently. Yeah, slightly differently with opposite result. No, we believe with the same result. But we think... So you don't think there's any additional act to point to? You said there was, but you don't think that? Under Castleman, I think... It's the intent and the death is enough. Well, I think that isn't actually the issue of what we have under assault with intent to murder, because assault with intent to murder in Maryland does require the act. There must be the assault made by the defendant and committed with this intent. So I think, and to the extent that I was differing in the way I was an offer to commit, I mean, you don't actually have to do something to assault somebody, do you? It's a threat. Generally called battery when you touch it. Who knows the definition? Right, and the attempted battery. Yes, well, I think here the situation is that the with intent to murder essentially modifies and changes the character of the assault. And that is shown in Maryland cases such as Webb. It's also consistent with this court's opinion in United States versus Reed, where Judge Niemeyer, you wrote the opinion there that was dealing with a situation where... Did Castleman leave the act of omission open? Did Castleman leave that question open? We don't decide whether an act of omission could supply the requirements. I can't find it, but I thought Castleman said that. Well, Castleman, I think it might be, I mean, we would think that Castleman says, yes, I mean, an act of omission is enough because it is a form of indirect force. But I thought they said they leave that question open. Am I wrong? I just can't find my copy. Your Honor, I believe they were leaving open some forms of the causation when you're dealing with offenses like a DUI. But I think it is the argument as to omissions is just like the argument as to indirect force foreclosed by Castleman because they are focusing appropriately on the deployment of force, especially when you're dealing with an act of omission and Castleman. Well, if I'm recalling correctly, Castleman doesn't explicitly refer to act of omission. It is referring in the language it uses to the indirect versus direct force. Well, I'll ask the other side. I'll ask the other side about that. Okay. Thank you, Your Honor. I think Mr. Patel's actually got Castleman by memory, so he can quote any part of this. Right. Yes. He has been talking about it quite a bit. And he looks eager. Right. And in anticipation of that, and we do believe that, yes, Castleman answers the question dealing, getting along to the indirect force question. We do think that the language in Castleman does foreclose the indirect argument based on the findings such as an in re Irby and other cases in the act in the Armed Career Criminal Act context that find that Castleman forecloses the Torres-Miguel line of argument on this distinction with respect to poison. But referring, turning back just briefly as to United States versus Reed, the fact that there is a lesser included offense of a crime, which I think is where the defense is sort of going with the Castleman and other arguments, it does not mean that you can't have an aggravated aversion, aggravated version be a violent felony. In cases like Webb and others in Maryland make clear that the nature of assault with intent to murder is such that it requires an act that would constitute murder if the victim died. So it itself requires a degree of force that is substantial. And I think that foreclosure... Just all right, stop for a second. So you say then it is a lesser included in the charge of conviction for the parents with the child or is not less? Well, with the charges that Mr. Patel refers to, those were depraved heart murder of the second degree. So it was certainly not a lesser included of any of those. I think there could be scenarios and this again, though, goes to sort of legal imagination because Mr. Patel doesn't point to any AWIM case. I know, but it has to be a reasonable probability. So you think that could happen in Is that your position? No, Your Honor. That is impossible in Maryland. It's sort of a separate question that I was addressing with Judge Niemeyer as to how that would be... So your representation is every assault with intent to murder in Maryland requires real physical force. It's an element? The element is, yes, in the jury instructions, such as in Franklin, it refers specifically to the use of force and injury. So we believe, yes, that is part of the offense of assault with intent to murder in Maryland. And again, it has to be the assault that was made by the defendant committed with this mens rea. So this is a separate whole scenario than what Mr. Patel is referring to. And again, he does not cite any AWIM case that relies on the omission. So if there are no further questions, we'll rely on that and the government. Thank you. All right, Mr. Patel. Hi, Your Honor. First, I just wanted to clear up Simpkins v. State and the Maryland law. And clearly, under Maryland law, assault with intent to murder can happen by an act of omission. So in Simpkins v. State, it was a second degree murder case. And the specific facts of the case, there was a reckless murder. But the court made very clear that assault with that second degree murder can also happen with an intent to kill and an act of omission. In fact, they approvingly cited to numerous cases before getting to the result that an act of omission is sufficient for second degree murder. They cited to Harrington v. State, these Texas cases in which there was an act of omission plus an intent to kill that resulted in murder. And this is Simpkins v. State, a Maryland court case. They cited to Regina v. Hughes, the Lord Campbell case, in which they said where a sick or weak person is exposed to the cold with an intent to destroy him. That's murder. They cited to Pallas v. State. In fact, that was an assault with intent to murder conviction. So how do you handle the Castleman opinion, which said maybe three times or two times that any bodily injury or death is a product of force? But your honor, you have... It's impossible. And they said it's impossible to have bodily injury or death without force. So two things. First of all, that has to be read in the context of Johnson 1. And it has to be read in context of the facts in Castleman. Because if we don't, we are reading out Johnson 1, it would have no meaning. The force laws would have no work. Because then we're just talking about the result, physical injury. And that's a residual law. If you intend and carry out an assault, there are other elements. But I'm talking about the force is the accomplishment. A violent end is the force. And they say the force is inherent in the bodily injury and death. You can't have it without it. Then your honor, I don't know what the words exertion of force by and through concrete bodies. What does that mean? That was the holding of Johnson. What is force by... Well, they're explaining this further. If you don't have to use your body to exert anything, then that's just reading it out. Then you're reading out Castleman because if you take Johnson literally, Castleman could not follow. Castleman said poisoning did not fit Johnson. No, but that's still an affirmative act. And I didn't talk about affirmative act. But that is an affirmative act that caused injury. I understand, but you missed the point that they were making, which was that the force element is in the result. And in other words, you bring about a death, you brought about a violent crime. That's illogical, your honor. With due respect, that is illogical. But also, I wanted to point out that I think we can agree that Castleman at least left that issue open. And if Castleman left that issue open, we do have a case, U.S. versus Gomez, your honor, which I know you're very familiar with, in which this court found that a child abuse statute with a physical injury element did not constitute a qualifying offense under the force clause because it could be committed by a non-affirmative act. The court found it wasn't divisible between non-affirmative act and affirmative act. So we do have a case that says explicitly that the lack of the act of omission is not the use of force. And then we have Castleman that didn't address it. And to read Castleman, the way your honor suggests, would read out another case. Well, I was just reading quotes from Castleman. And your honor, also in Castleman, Judge Shedd, I wanted to refer back to your question. Don't say anything bad. The court there did say we are not resolving the issue of whether physical injury necessarily requires violent physical force. And then, again, we have Middleton that came after Castleman recently, and the court said there that, look, the Torres Miguel indirect force versus direct force part of Torres Miguel, that's overruled by Castleman. But not the physical injury necessarily requires physical force. The causation of physical injury necessarily requires a physical force. So that's the law of the circuit. It is simply not the law that every physical injury that result requires the use of force. And it's not logical. And we have Maryland case law specifically saying that second degree murder, which includes assault with intent to kill, can be committed by an act of omission. How do you bring about bodily injury or death without force? Exactly the way it happened in Simpkins. I mean, look, if I was a parent and I just walked into the house and my kid was on the floor and I didn't feed the kid for four days because I didn't care, I brought about the death by doing nothing. That's an act of omission, your honor. That and Maryland makes that clear. That's not just reckless murder. It can be done with an intent to kill. Well, it can be done, but the court's holding was it was a depraved. It was that those were the facts. But then you have to look at what the court says is the law. It makes clear that it can happen that way. That's a second degree murder is a broader statute. They didn't bring that one under the intent. Second degree murder includes intent. Yeah, but then I decided to a bunch of cases where, and that I wanted to bring you to an Aparecio-Soraya on the realistic probability test. The court said, look, if the court has said an offense can happen in a way that doesn't constitute a crime of violence, that's sufficient. In fact, I want to remind the court in Aparecio-Soraya, it was a resisting arrest case, and the defense could not point to a single case in which the actual facts involved offensive touching. Yet the court still said mundane legal research skills tell us that it can happen that way because the court had said in DICTA that it could happen by offensive touching. We have far more than DICTA. Do you not suggest that we have mundane skills? Of course not. All right. I see we have a red light. Thank you. Come down and greet counsel, adjourn court for the day and conference. Court stands adjourned until tomorrow morning at 930. Drive safe to the United States. I'm Anasana Bokori.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Dennis W. Shedd